**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

─────────────────────────────────────────────

| | | |
|---|---|---|
| **MICHAEL J. IANNONE, JR.** | ) | |
| **and NICOLE A.JAMES,** | ) | |
| **individually and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 19-cv-2779-MSN-tmp** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUTOZONE, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

─────────────────────────────────────────────

**ORDER DENYING MOTION TO COMPEL AND FOR SANCTIONS**

─────────────────────────────────────────────

Before the court by order of reference is plaintiffs' Motion to Compel and for Sanctions, filed on July 25, 2022. (ECF Nos. 192, 194.) Non-parties Mitsubishi Chemical America, Inc.; Fujifilm USA, Inc.; Prudential Retirement Insurance and Annuity Company ("Prudential"); Reyes Holdings, LLC; Albert Einstein College of Medicine; and UChicago Argonne, LLC all responded to the motion on August 5, 2022. (ECF Nos. 195, 196, 197, 200, 201, 202.) Plaintiffs filed an omnibus reply on August 12, 2022. (ECF No. 204.) For the reasons below, plaintiffs' motion is DENIED.

## I.   BACKGROUND

The present case involves claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA") that are brought against AutoZone, Inc. ("AutoZone"), members of the AutoZone

investment committee, and the investment fiduciaries of the AutoZone 401(k) plan ("Plan"). (ECF No. 85 at PageID 1168-69.) In brief, the plaintiffs, who were participants in the Plan, allege that the defendants breached their fiduciary duties under ERISA by failing to monitor the fees and performance of the Plan's investments. (Id. at PageID 1170.) The Plan's most significant investment option was "a proprietary stable value fund" called the Prudential Guaranteed Income Fund ("GIC Fund"). (Id. at PageID 1209.) Plaintiffs filed their original complaint on November 13, 2019, and filed an amended complaint on September 22, 2021, seeking class certification, damages, and injunctive relief. (ECF Nos. 1, 85.)

Prudential, a non-party, is an insurance company that provided administrative and investment services for the Plan. (ECF No. 140 at PageID 1845.) Plaintiffs claim that Prudential is the principal beneficiary of the excessive administrative and service fees. (ECF No. 112-1 at PageID 1462.)

## A.  Prudential's Document Production

On December 1, 2020, plaintiffs served a subpoena on Prudential pursuant to Federal Rule of Civil Procedure 45, seeking information relating to the alleged excessive investment and administrative fees paid to Prudential. (Id.) Prudential timely served their responses and objections to the subpoena. (ECF No. 140 at PageID 1846.) Additionally, Prudential produced more than

3,000 pages of documents on February 19, 2021, and June 4, 2021. (Id.) In September 2021, plaintiffs requested additional documents from Prudential, causing Prudential to make a third document production in November 2021. (ECF No. 197 at PageID 4407.)

**B.  Plaintiffs' Motion to Compel Discovery from Prudential (ECF No. 112)  and Subsequent Issuance of Third-Party Subpoenas**

On November 2, 2021, plaintiffs filed a Motion to Compel, seeking production of seven categories of documents that were at issue. (ECF No. 112.) On January 27, 2022, the undersigned held a hearing on the motion and entered an order stating that all issues had been resolved except for one, which concerned documents that related to plans other than the AutoZone Plan. (ECF No. 158.) On February 11 and March 4, 2022, the undersigned held two additional hearings to resolve the remaining issue and to address two new issues that were raised by plaintiffs after the January 27 hearing. (ECF Nos. 168, 177.)

On March 10, 2022, the undersigned entered a joint proposed order that addressed the three open issues. Relevant to this motion is the request for "documents relating to stable value products furnished by Prudential to certain other defined contribution plans." (ECF No. 178 at PageID 2775.) Plaintiffs sought production of the Rule 404a-5 disclosures for each of the twenty-nine plans that they posited were similar to AutoZone's for the last ten years. (ECF No. 112-4 at 1507-08.) Prudential argued that they

- 3 -

should not be required to produce those documents because they "are not relevant to Plaintiffs' claims, contain other plans' confidential information, and would be unduly burdensome to collect, review, and produce." (ECF No. 140 at PageID 1854.) The undersigned ultimately ordered Prudential to produce certain documents for eleven of the twenty-nine plans:

> Prudential is directed to produce all of the Rule 404a-5 disclosures (i.e., disclosures provided by Prudential that were intended to satisfy the disclosure obligation to provide "investment-related information" at least annually as set forth in 29 C.F.R. § 2550.404a-5(d)) from 2010 to 2021, to the extent they exist, showing Prudential Guaranteed Interest Fund [("GIC")] rates for the 11 versions of the [GIC] referenced in Plaintiffs' Motion by March 18, 2022. Prudential represents that the remaining 18 of the 29 funds identified by Plaintiffs are not versions of the [GIC].

(ECF No. 178 at PageID 2776-77) (footnote omitted). Prudential complied with the court's order on March 8 and 16, 2022, producing 179 documents total. (ECF No. 197 at PageID 4408.)

Unbeknownst to the court, back in February of 2021, plaintiffs had served a subpoena on one of the other plans excluded from the court's order, the VSP Retirement Plan ("VSP Plan"). (ECF No. 190 at PageID 3357 n.20.) The VSP Plan provided responsive documents to the subpoena on March 8, 2021, which, according to plaintiffs, show "that from 2012 to 2017 it had a Prudential Guaranteed Income Fund substantially identical to the [GIC] Fund, except for the rate, which in VSP's case was higher." (Id.) Although plaintiffs apparently possessed the information about the VSP Plan fund, it

was not presented in connection with their November 2 Motion to
Compel. (ECF No. 112.) Because plaintiffs does "not believe
Prudential is a reliable source for information concerning
Prudential stable value products," on May 20, 2022, they served
document subpoenas on seven of the eighteen remaining plans that
they had originally requested in their November 2 Motion to Compel.
(ECF No. 190 at PageID 3358-59.)

**C.    Prudential's ESI Production**

Prudential also made an ESI production on February 18, 2022.
(ECF No. 197 at PageID 4409.) This production included 6,400
documents, which totaled 32,000 pages, including the draft of an
email dated March 18, 2019, that plaintiffs represent is "the
single most important document in the case." (Id.; ECF No. 192 at
PageID 3856.) The parties agreed to apply two standard procedures
to their production: de-duplication and email threading. (ECF No.
197 at PageID 4409.) Prudential defines email threading as
"production of only the most complete iterations of email chains."
(Id.)

**D.    Deposition of Anton Tansil**

On March 30, 2022, plaintiffs served two subpoenas on Anton
Tansil, a Managing Director at Prudential, one for a Rule 30(b)(1)
deposition and the second for a Rule 30(b)(6) deposition. (ECF
Nos. 197-17, 197-18.) Prudential served objections and responses
to the Rule 30(b)(6) notice on May 16, 2022. (ECF No. 197 at PageID

4409.) Although Prudential requested that the depositions be conducted remotely, plaintiffs insisted that the depositions be taken in person. (Id. at PageID 4410.) The depositions were scheduled for July 6 and 7, 2022, in Hartford, Connecticut, where Tansil resides. (Id. at 4410.) Prudential designated Tansil to testify on their behalf. (Id.)

On July 4, 2022, plaintiffs' counsel emailed counsel for Prudential, requesting that Prudential stipulate to the authenticity of over 300 documents. (Id.) Prudential reviewed the documents on July 4 and 5, 2022, and agreed to a substantial stipulation on the record at the deposition. (Id.)

Tansil's Rule 30(b)(6) deposition took place on July 6, 2022. Prudential agreed to let the Rule 30(b)(6) deposition continue into the next day (July 7, 2022), provided that Tansil's individual deposition could also be completed the same day. (Id. at PageID 4411.) Plaintiffs expressly waived the full seven hours of Tansil's individual deposition, stating, "I am going to waive – we will finish up tomorrow and use the entire seven hours for both finishing this and the individual deposition." (ECF No. 198-6 at PageID 4641.)

On July 7, 2022, plaintiffs completed Tansil's Rule 30(b)(6) deposition and began his individual deposition. (ECF No. 197 at PageID 4411.) Plaintiffs questioned Tansil about two versions of the March 18, 2019 email: one version that was produced by

- 6 -

Prudential, timestamped at 11:18 a.m. EST ("Email A") and a similar
email that was produced by AutoZone timestamped 10:22 a.m. CST
("Email B"). (Id.) These emails were drafted by Tansil and
addressed to Pamela Samuels-Kater, an employee in the AutoZone
Human Resources department. Email A, which as discussed below was
a draft email that was never sent, states as follows:

> Morning
>
> Hoping to catch up with you for 15 min. or so to prep
> for Thursday's meeting.
>
> But to answer your questions:
>
> 1.    The current price is approx. $66 per participant.
>
> 2.    Our three pricing scenarios include the use of
>       Pru's SV option. We didn't offer a price without
>       the Pru SV option mostly because it wouldn't be
>       attractive.
>
> 3.    Your current SV rate is lower than market
>       rates. We can swap out your current SV fund for
>       another more competitive stable value option which
>       is yielding a gross rate north of 3%.

(ECF No. 192 at PageID 3858.) Email B, which was sent, states
as follows:

> Morning,
>
> Hoping to catch up with you for 15 min. or so to prep
> for Thursday's meeting.
>
> But to answer your specific questions:
>
> 3.    The current price is approx. $66 per participant.
>
> 4.    Our three pricing scenarios include the use of
>       Pru's SV option. We didn't offer a price without

the Pru SV option mostly because it wouldn't be attractive.

3.   Your current SV rate (1.70%) is lower than market rates. We can swap out your current SV fund for another more competitive stable value option which is yielding a gross rate north of 3%. This has been something we've been wanting to do for some time now.

Let's discuss.

(Id. at PageID 3856.)

Apparently during the Rule 30(b)(1) deposition, plaintiffs' counsel noticed that the two emails were different. (Id.) When counsel for Prudential was unable to immediately produce their own outgoing version of Email B, plaintiffs' counsel abruptly suspended the deposition, accusing Prudential of altering Email A. (ECF No. 198-5 at PageID 4600) ("I am suspending the deposition because there appears to be a question about whether you have an altered document.").

After the depositions, Prudential made two supplemental document productions to plaintiffs. (ECF No. 197 at PageID 4413.) On July 8, 2022, Prudential confirmed that they had not produced their own copy of Email B in their prior productions. (Id. at PageID 4413.) On July 12, 2022, Prudential produced that email along with a native version of Email A, which confirmed that the email was a draft email that was never sent. (Id.) Additionally, Prudential provided each non-privileged email in the threads connected to Email B. (Id.)

After investigating why Prudential's copy of Email B had been inadvertently withheld, Prudential discovered that some emails had been unintentionally excluded from their prior productions because of the parties' use of email threading. (Id. at PageID 4414.) Prudential explained that "the email was a lesser-included email in a thread in which the most-inclusive email was sent to a Prudential in-house attorney and was thus withheld as privileged." (Id.) After this discovery, Prudential re-reviewed all email threads that had been withheld as privileged and determined that there were four other emails that had been mistakenly withheld. (Id.) Prudential produced these, along with their attachments, on July 18, 2022. (Id.)

**E.   Motion to Compel and for Sanctions**

Plaintiffs filed the present motion seeking to sanction Prudential for "act[ing] in bad faith by making a false representation to the Court" and "failing to provide full, complete and accurate information its responses to discovery requests." (ECF No. 192 at PageID 3873.) In addition, they ask the court to require Prudential to review their discovery responses, to correct deficiencies, and to file a certification with the court that the updated responses are true, accurate, and complete. (Id. at PageID 3874.) Further, they ask the court to award costs and fees for traveling to Tansil's depositions in Connecticut, to require Tansil to travel to Birmingham, Alabama or Memphis, Tennessee to

complete his deposition with time limits waived, and to award attorneys' fees for preparing for this second deposition. (Id.) Finally, they ask the court to require the other seven non-parties to comply with the outstanding subpoenas and to award attorneys' fees for the costs of preparing the motion. (Id. at PageID 3873-74.)

## II.  ANALYSIS

### A.  Sanctions Against Prudential

Plaintiffs seek sanctions against Prudential pursuant to the inherent power of the court, alleging that Prudential has "withheld evidence, has misrepresented facts to this Court and provided misleading and incomplete disclosures." (ECF No. 192 at PageID 3870, 2872-73.) They allege that Prudential produced a document that was "not authentic" and withheld production of their own copy of Email B. They also claim that Prudential's representation to the court that the VSP Plan did not have a GIC Fund was false.

Prudential argues that the document whose authenticity was questioned (Email A) was a draft email that differed from the email that was actually sent to AutoZone (Email B). (ECF No. 197 at PageID 4411.) Upon discovering that their copy of Email B had been withheld mistakenly for privilege, Prudential asserts that they reviewed all privileged documents and discovered four other documents that should have been produced, which they subsequently provided to plaintiffs. (Id. at PageID 4413-14.) Prudential also

argues that because the VSP Plan does not currently have a GIC fund and did not have one at the time of plaintiffs' Motion to Compel, the plan was properly excluded. (<u>Id.</u> at PageID 4420.)

    1.   <u>Standard of Review</u>

The court has inherent authority to issue sanctions where "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has engaged in conduct tantamount to bad faith." <u>Butrum v. Louisville Metro Gov't</u>, No. 3:17-CV-330-RGJ-CHL, 2020 WL 1518269, at *8 (W.D. Ky. Mar. 30, 2020) (internal quotations omitted). However, "[t]he Court's inherent authority should be used with restraint and discretion." <u>Id.</u> (citing <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991)).

    2.   <u>The March 18 Email</u>

Plaintiffs seek several forms of relief in connection with the March 18 email: 1) attorneys' fees for traveling to Hartford for Tansil's depositions; 2) an order requiring Tansil travel to Birmingham, Alabama or Memphis, Tennessee to complete his deposition with time limits waived; 3) an order requiring Prudential to certify that they have produced all necessary discovery; and 4) attorneys' fees for the costs of drafting this motion and preparing for the second deposition.

The undersigned finds that Prudential did not engage in any discovery misconduct regarding the March 18 email. There is nothing to suggest that Email A, which Plaintiffs had in their possession

for several months, was altered. Indeed, the metadata associated with the email shows that it was never sent. "In an era where vast amounts of electronic information is available for review, discovery in certain cases has become increasingly complex and expensive. Courts cannot and do not expect that any party can meet a standard of perfection." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 461 (S.D.N.Y. Jan. 15, 2010) (overruled, in part, on other grounds). Prudential's failure to produce their own copy of Email B appears to be the result of an ESI oversight rather than bad faith conduct. Upon the realization that the email had been mistakenly withheld, Prudential reexamined all privileged documents and immediately produced four more documents. Prudential's explanations of the difference between Email A and B and the reason that their copy of Email B was not originally produced are reasonable and do not point to any sanctionable behavior. Because Prudential has already represented that they have reviewed and corrected the production issue, plaintiffs' request that Prudential certify that the updated discovery responses are true, accurate, and complete is DENIED.

The fact that plaintiffs did not finish Tansil's Rule 30(b)(1) deposition is an issue of their own making. Plaintiffs had possession of both Emails A and B for several months and did not notice the differences, despite Email B being "the single most

important document in this case." (ECF No. 192 at PageID 3856.)
When plaintiffs' counsel noticed the discrepancies (apparently
during Tansil's individual deposition), they did not take the
opportunity to question Tansil about the differences between the
two emails or move on to the remainder of their questions. Instead,
plaintiffs' counsel immediately suspended the deposition based on
an unsubstantiated suspicion that Prudential had altered
documents. As a result, plaintiffs are not entitled to fees for
traveling to Hartford for Tansil's deposition, nor will Tansil be
required to travel to Birmingham or Memphis for a deposition of an
indefinite length.

Although the court would be entirely within its discretion to
deem the remainder of Tansil's deposition waived (particularly
since discovery is now closed), in the interest of justice,
plaintiffs will be allowed to finish Tansil's Rule 30(b)(1)
deposition *remotely*. On July 6, 2022, plaintiffs agreed that they
would waive the full seven hours for Tansil's Rule 30(b)(1)
deposition if they were able to continue his Rule 30(b)(6)
deposition into July 7, 2022. (ECF No. 198-6 at PageID 4641.)
According to the record, Tansil's Rule 30(b)(6) deposition resumed
on July 7, 2022, beginning at 9:04 a.m. and ending at 11:15 a.m.
Tansil's individual deposition began at 11:27 a.m. and ended at
2:59 p.m., with breaks taken from 11:59 a.m. to 12:42 p.m., 1:35
p.m. to 1:46 p.m., and 2:10 p.m. to 2:39 p.m. (ECF No. 198-5.) The

- 13 -

continuation of the Rule 30(b)(6) deposition on July 7, 2022, lasted two hours and eleven minutes. Plaintiffs have already deposed Tansil individually for two hours and nine minutes and agreed that the time used for his Rule 30(b)(6) deposition on July 7 would be subtracted from his individual deposition. Thus, the remainder of Tansil's remote deposition will be two hours and forty minutes, and shall be conducted within thirty days of this order. Plaintiffs' request for attorneys' fees is DENIED.

### 3.   Prudential's Representations About Other Plans

Plaintiffs also argue that Prudential should be sanctioned for their representation that eighteen of the twenty-nine funds identified by plaintiff were not versions of the GIC Fund. (ECF No. 192 at PageID 3862.) Plaintiffs claim that at least one of the funds on that list, the VSP Plan, had a GIC Fund "from at least 2012 to 2017." (Id. at PageID 3863.) Prudential points out that the joint proposed order, which was approved by plaintiffs and adopted by the court, stated that "Prudential represents that the remaining 18 of the 29 funds identified by Plaintiffs *are not* versions of the [GIC]." (ECF No. 178 at PageID 2776 (emphasis added).

Notably, plaintiffs had the information about the VSP Fund in their possession since March 8, 2021, well before their filing of the November 2 Motion to Compel. (ECF No. 190 at PageID 3357 n.20.) It does not appear that, during the negotiations over the language

- 14 -

of the proposed order, plaintiffs inquired why the VSP Fund was excluded from Prudential's list of eleven funds. The question of whether the agreed-upon plans were limited to those that currently have comparable GIC Funds was not raised by the plaintiffs at any of the multiple hearings on this issue. Simply put, there is no evidence that Prudential made a misrepresentation to the court regarding the VSP Plan's stable value fund and the undersigned has no reason to believe that Prudential's characterization of the remaining funds is not accurate.

**B.   Third-Party Subpoenas**

"To avoid relying on information provided solely by Prudential," plaintiffs served seven subpoenas on 401(k) plans that were originally listed by plaintiffs in their November 2 Motion to Compel. Five of the plans filed objections to plaintiffs' present motion to compel. (ECF Nos. 195, 196, 200, 201, 202.)

At the March 4, 2022 hearing, plaintiffs represented that they would be satisfied if Prudential provided the Rule 404a-5 disclosures for the eleven agreed-upon plans. (ECF No. 178 at PageID 2776.) However, the subpoenas served on each of the third-parties seek information far beyond the Rule 404a-5 disclosures that they originally sought. These subpoenas request the following:

1. Please produce a copy of the Plan's most recent summary plan description

2. Please produce a complete copy of the Plan's contract or agreement with the provider of any Stable Value Fund, including, without limitation, any "Investment Agreement," "Guaranteed Income Fund Investment Addendum," "Synthetic GIC Contract," "Deposit Schedule," "Interest Schedule," or similar document, together with all amendments, addendums and schedules for the period beginning December 1, 2010 and ending with the date of [the fund's] response.

3. Please produce a complete copy of the Plan's ERISA 404(a)(5) annual participant fee disclosures, for the period beginning December 31, 2012 and ending with the date of [the fund's] response.

4. Please produce documents sufficient to show all crediting rates or interest disclosures and notice of crediting or interest rate changes to the Stable Value Fund, for the period beginning December 31, 2010 and ending with the date of [the fund's] response.

5. Please produce all fact sheets and descriptions of the Plans' Stable Value Fund, for the period beginning December 31, 2013 and ending with the date of [the fund's] response.

6. Please provide a copy of all documents evincing negotiations with the stable value provider that relate to the Stable Value Fund, for the period beginning December 31, 2014 and ending with the date of [the fund's] response.

7. Please produce a copy of your investment policy statement or fee policy statement for the Plan for the period beginning December 31, 2010 and ending with the date of [the fund's] response.

(See, e.g., ECF No. 192-21 at PageID 4288-89.) It appears that the plaintiffs are attempting to use these third-party subpoenas to circumvent the court's prior order on the November 2 Motion to Compel.

- 16 -

In its March 10 order, the court ordered that Prudential must produce the Rule 404a-5 forms for the plans that had the same product as the GIC Fund. (ECF No. 178.) Consistent with the language in the agreed proposed order, Prudential produced the Rule 404a-5 forms for plans that currently have a GIC Fund. The undersigned finds that Prudential has satisfied its obligations and complied with the court's order. Plaintiffs' Motion to Compel as to the third-party subpoenas is DENIED.

### III.   CONCLUSION

For the reasons stated above, the plaintiffs' Motion to Compel and for Sanctions is DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

September 9, 2022
Date

- 17 -