# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. IANNONE, JR. and NICOLE A. JAMES, as plan participants, on behalf of the AUTOZONE, INC. 401(k) Plan, and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AUTOZONE, INC., et al., <br><br> Defendants. | Case No. 2:19-cv-02779-MSN-tmp |

## ORDER ADOPTING THE REPORT AND RECOMMENDATION

Before the Court is the Chief Magistrate Judge's Report and Recommendation, ("Report," ECF No. 205), issued on August 12, 2022. The Report recommends that Plaintiffs' Motion for Class Certification (ECF No. 173) be granted in part. (ECF No. 205 at PageID 4800.) Defendants filed timely objections to the Report on August 26, 2022. (ECF No. 209.) Plaintiffs timely filed a Response to Defendants' objections on September 9, 2022. (ECF No. 210.) For the reasons below, the Court **OVERRULES** Defendants' objections and **ADOPTS** the Report.

## BACKGROUND

This litigation involves Plaintiffs' claims that AutoZone, Inc. ("AutoZone") and others breached their fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 85 at PageID 1169.) Plaintiffs' Amended Complaint alleges one count of

breach of fiduciary duty pursuant to 29 U.S.C. § 1109. (*Id.* at PageID 1265.) They seek certification of the following class pursuant to Fed. R. Civ. P. 23(b)(1):

> All persons, other than Defendants, who were participants as of November 11, 2013 in Plan, including (i) beneficiaries of deceased participants who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future, and (ii) alternate payees under a Qualified Domestic Relations Order who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future; and (b) all persons, other than AutoZone, who have been participants or beneficiaries in either the Plan and had account balances in the Plan at any time between November 11, 2013 through the date of judgment.

(ECF No. 173 at PageID 2522.)

## STANDARD OF REVIEW

### A.  Report and Recommendation

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869–70 (1989)); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). For dispositive matters, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *See id.* at 151.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is

to "focus attention on those issues . . . that are at the heart of the parties' dispute."). Each objection to the magistrate judge's recommendation should include how the analysis is wrong, why it was wrong and how *de novo* review will obtain a different result on that particular issue. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

A general objection, or one that merely restates the arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in the report and recommendation. *Id.* When an objection reiterates the arguments presented to the magistrate judge, the report and recommendation should be reviewed for clear error. *Verdone v. Comm'r of Soc. Sec.*, No. 16-CV-14178, 2018 WL 1516918, at *2 (E.D. Mich. Mar. 28, 2018) (citing *Ramirez v. United States,* 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012)); *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 965 (E.D. Tenn. 2017).

**B.     Class Certification**

Class "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rigorous analysis is "critical because it ensures that each of the prerequisites for certification have actually been satisfied. Thus, satisfying Rule 23(a) requires something more than mere repetition of the rule's language; 'there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.'" *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of*

3

*Mich.*, 654 F.3d 618, 629 (6th Cir. 2011) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). The party seeking certification bears the burden of establishing the elements of a class action. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1086 (citing *Gen. Tel. v. Falcon*, 457 U.S. 147, 161(1982)). A court's determination that class certification is permissible must be "based upon information other than that which is in the pleadings although it may do so based on the pleadings alone where they set forth sufficient facts. In making such a determination, a district court may draw reasonable inferences from the facts before it." *Woodall v. Wayne Cnty., Mich.*, No. 20-1705, 2021 WL 5298537, at *3 (6th Cir. Nov. 15, 2021).

In addition to these prerequisites, "the putative class must satisfy at least one of the requirements of Rule 23(b)." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019). *See also Dukes*, 564 U.S. at 245. Plaintiffs seek certification in this matter under Rule 23(b)(1), which states that a putative class action that satisfies Rule 23(a) may be maintained if:

> [P]rosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## **DISCUSSION**

Defendants' principal objection is to the scope of the class recommended in the Report. Specifically, they agree with the Report's recommendation to narrow the proposed class to only those Plan participants who invested in the GoalMaker funds, but further contend that the class cannot include participants in the Plan who invested in different GoalMaker funds or at different times than the Plaintiffs. (ECF No. 209 at PageID 4885–86.) At the outset, Defendants "object to

all of the R&R's Proposed Findings of Fact that are based on the Amended Complaint's allegations," arguing that the Report relied on Plaintiffs' allegations in their Amended Complaint in lieu of actual evidence. (ECF No. 209 at PageID 4891.) Defendants note that Plaintiffs did not invest in five of the GoalMaker funds or use the GoalMaker program for the entirety of the putative class period. Consequently, Defendants argue, Plaintiffs (1) lack constitutional standing and (2) cannot show that the Rule 23(a) prerequisites—specifically commonality, typicality, and adequacy—are met as to those five funds and as to periods in which they were not invested in GoalMaker funds.[1] (ECF No. 209 at PageID 4892–98.) Since the Report recommended finding both constitutional standing and the Rule 23(a) prerequisites satisfied in this matter, Defendants thus object to those proposed findings.

**A.  Findings of Fact**

Defendants object to all but three of the Chief Magistrate Judge's Proposed Findings of Fact.[2] Defendants provide no specific basis for this blanket objection—which appears to apply to every fact other than those excepted by Defendants—save for their general opposition to the Chief Magistrate Judge citing to allegations in the Plaintiff's Complaint.[3] This kind of objection does

---

[1] Defendants have stipulated that the numerosity requirement is satisfied. (ECF No. 173-1 at PageID 2542.)

[2] Defendants only agree to the following three facts: "(1) named Plaintiffs Iannone and James are former AutoZone employees who participated in the Plan; (2) Iannone was invested in the Plan from October 1, 2013 to September 30, 2014; and (3) James was enrolled in the Plan from January 1, 2018 to March 31, 2018." (ECF No. 209 at PageID 4891.) They appear to deny all other facts from pages 2 through 15 of the Report that "summarize (and cite to) the allegations in Plaintiffs' complaints." (*Id.* at n.7.)

[3] Defendants at various points argue that the Chief Magistrate Judge's conclusions were not predicated on evidence. (*See, e.g.*, ECF No. 209 at PageID4885, 4890–94.) The Court disagrees. The Chief Magistrate Judge granted the request for oral argument about Plaintiffs' Motion for class certification, during which parties discussed deposition testimony of multiple witnesses (*see* ECF No. 208 at PageID 4849, 4852–55, 4863, 4869, 4877) as well as Plaintiffs' account statements (*Id.* at PageID 4862–65). He referenced Defendant's arguments concerning

little, if anything, to make clear to the Court "those issues that are dispositive and contentious." *Currie*, 50 F.3d at 380; *see also Arn*, 474 U.S. at 147. For example, why is the Report's finding that "[t]he Plan is a defined-contribution retirement plan funded through employee contributions and matching contributions from AutoZone" (ECF No. 205 at PageID 4801) objectionable to Defendants when they have explained in their own submissions to the Court that "[t]he Plan is a defined contribution plan" that is "funded through both employee contributions and matching contributions from AutoZone . . . "? (ECF No. 181 at PageID 2792.) Is it incorrect that "[p]articipants who did not actively select an investment approach were placed into the GoalMaker option by default"? (ECF No. 205 at PageID 4802.) Did the Report mischaracterize things when it proposed finding that "AutoZone was responsible for the selection of the GoalMaker funds"? (*Id.* at PageID 4803.) How can Defendants not object to the Report's recommendation that the proposed class be narrowed, when that recommendation also relied on proposed findings of fact to which Defendants object? Plaintiffs also point out that Defendants have included within this objection facts Defendants have not denied. (ECF No. 210 at PageID 4912–13.) These types of questions demonstrate the inadequacy, and perhaps the disingenuousness of, Defendants' objections.

Further, while "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013), Defendants' failure to identify specific concerns with the Report's Proposed Findings of Fact makes it difficult for the Court to discern what factual or legal disputes exist on these issues.

---

the usefulness of certain witness testimony in his Report. (ECF No. 205 at PageID 4838.) Both parties' briefs, to which the Report repeatedly cites, also discuss the evidence Plaintiffs have submitted in this matter. (*See, e.g.*, ECF No. 172 at PageID 2042–46.)

Accordingly, and after review of the Report, the Court deems their blanket objection a general objection and **ADOPTS** and incorporates the Report's Proposed Findings of Fact. *See Howard*, 923 F.2d at 509 ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object.").

**B.     Constitutional Standing**[4]

The Report recommended that putative class members who did not invest through the GoalMaker program be excluded from the class, since "those individuals have not suffered an injury-in-fact, and therefore lack Article III standing." (ECF No. 205 at PageID 4829.) Defendants agree with this limitation, as does this Court. For the reasons set forth in the Chief Magistrate Judge's Report, the Court thus **ADOPTS** that recommendation. *See Arn*, 477 U.S. at 150.

Defendants nonetheless object because they argue *Plaintiffs* have not suffered an injury-in-fact as to the five funds in which they did not invest, and therefore lack standing to pursue claims as to those funds.[5] (ECF No. 181 at PageID 2790.) Not only do these objections "merely restate[] the arguments previously presented and addressed by the magistrate judge, [and so do] not sufficiently identify alleged errors in the report and recommendation," *Howard*, 932 F.2d at 509, they are also not supported by relevant Sixth Circuit caselaw. As thoroughly examined in the Report, the Sixth Circuit held in *Fallick* "that [the plaintiff] did not have to be a member of every plan at issue to maintain ERISA class claims that challenged the defendant's common conduct

---

[4] Defendants included a footnote in their Objections to the Report objecting to the Report's interpretation of *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). (ECF No. 209 at PageID 4893–94, n.9.) Because the Report's interpretation of *Fallick* was the primary basis for finding that Plaintiffs had constitutional standing to pursue claims as to the five funds in which they did not personally invest, the Court believes Defendants to have objected to the Report's proposed finding as to constitutional standing, and so reviews it *de novo*.

[5] The footnote in which Defendants seem to object to the proposed finding of constitutional standing (n.9) provides no explanation, so the Court infers its meaning from a prior submission to the Court discussing this argument. (ECF No. 181 at PageID 2790.)

across multiple plans." (ECF No. 205 at PageID 4817 (citing *Fallick*, 162 F.3d at 422–23).) The Report also examined three other cases in the Sixth Circuit that followed *Fallick*'s reasoning; the only outlier in the Sixth Circuit to not do so; and, for good measure, nine cases outside the Sixth Circuit that found constitutional standing for plaintiffs alleging plan-wide misconduct while not being invested in each of the challenged funds. (*See id.* at PageID 4819–24.) Determining that, here, Plaintiffs' allegations of excessive investment management and recordkeeping fees went to Defendants' "*practices*" rather than specific funds, and that allegations concerning Defendants' selection and monitoring of funds applied to all of the funds, the Report proposed finding that Plaintiffs had constitutional standing despite not being invested in every single fund within the GoalMaker program. (*Id.* at PageID 4824–25.)

Defendants contend that even if *Fallick* does permit such standing, that case does not apply because, here, it is disputed that Defendants' relevant conduct applies equally to everyone in the putative class and the Report examined no evidence suggesting it did. (ECF No. 209 at PageID 4893–94 n.9.) Defendants made this very argument concerning equal application in their opposition brief and at the certification hearing, which prompted Plaintiffs to re-examine with the Court portions of AutoZone's deposition testimony. (*See , e.g.*, ECF No. 181 at PageID 2799; ECF No. 208 at PageID 4868–71, 4875–76.) The Chief Magistrate Judge's treatment of it is thus reviewed for clear error. *See Verdone*, 2018 WL 1516918, at *2 (citing *Ramirez*, 898 F. Supp. 2d at 663) ("[W]hen objections are 'merely perfunctory responses . . . rehashing . . . the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error.'"). The Court finds none. Plaintiffs referred the Chief Magistrate Judge to deposition testimony indicating that AutoZone treated all the plan participants the same. (ECF No. 208 at PageID 4849.) The Court also agrees that Plaintiffs' "allegations

8

[related to excessive fees are] of an imprudent process that allegedly injured all investors in the GoalMaker funds" and that their allegations about Defendants' process for selecting and monitoring the investment menu "applies to all of the challenged funds." (ECF No. 205 at PageID 4825.) *See also McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-cv-01158, 2021 WL 826756, at *3 (M.D. Tenn. Mar. 4, 2021) (citing *Cassell v. Vanderbilt Univ.*, No. 3:16-CV-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018)) ("Courts have recognized that a plaintiff who is injured in his or her own plan assets—and thus has Article III standing—may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury.").[6]

Accordingly, the Court **ADOPTS** the proposed finding that Plaintiffs have constitutional standing to pursue claims related to GoalMaker funds in which they were not investors.

**C.     Class Certification**

  **1.     Commonality, Typicality, and Adequacy**

The Court finds commonality, typicality, and adequacy satisfied for the putative class when limited to Plan participants invested through the GoalMaker program. Commonality and typicality "tend to merge" because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. Additionally, "commonality and typicality tend to merge with the requirement of adequate representation . . . ."

---

[6] The Court declines to find that these cases were wrongly decided, as Defendants maintain. (ECF No. 181 at PageID 2800, n.11.) The vast majority of cases to examine this issue in the Sixth Circuit have followed *Fallick*'s reasoning. Further, Defendants' attempt to undermine these cases by reference to the cursory review of *Fallick* by an out-of-circuit district court is not persuasive. (*See id.*)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). "[T]here need be only one common question to certify a class." *Id.* at 853 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). Typicality is satisfied "if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Id.* at 852 (quoting *Sprague*, 133 F.3d at 399). A claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. There are "two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Id.* at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

> There are several questions of law or fact common to all putative class members:
>
> (1) whether the Defendants breached their fiduciary duties;
> (2) the losses suffered by the Plan;
> (3) whether the fiduciary had policies and procedures to investigate the merits of the investments and to structure the investments;
> (4) whether the fiduciaries had policies and procedures to monitor the prudence of the investments on an ongoing and regular basis;
> (5) whether the fiduciaries followed any policies and procedures to monitor the prudence of the investments on an ongoing and regular basis, including but not limited to high cost funds as alleged;
> (6) whether or not the fiduciaries discharged their duties with respect to the Plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administration of the Plan; and
> (7) what equitable relief should be imposed to remedy the fiduciary breaches and to prevent future ERISA violations.

(ECF No. 205 at PageID 4832–33 (citing ECF No. 172 at PageID 2051–52; *see also* ECF No. 173-1 at PageID 2545–46).) All of these questions go to the central issue of whether or not Defendants breached their fiduciary duties *at the Plan level*, which naturally implicates all members enrolled

in the GoalMaker program.  *See, e.g., Shirk v. Fifth Third Bancorp.*, No. 05-cv-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (quoting *Banyai v. Mazur*, 202 F.R.D. 160, 1963 (S.D.N.Y. 2002)) ("Typically, 'the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'").  Plaintiffs have made allegations that do not require the Court to differentiate between the specific funds within GoalMaker.  For example, Plaintiffs allege that Defendant failed to monitor the GoalMaker program as evidenced by their decision "[y]ear after year" to "retain[] the existing GoalMaker funds and exclude[] the low-cost index funds from use by Goalmaker." (ECF No. 85 at PageID 1172–73.).  Defendants' decisions about which funds not to include in the GoalMaker program would naturally affect all members enrolled in it, regardless of the specific funds in which those members were invested.  In light of these considerations, the Court finds commonality satisfied in this case.

Relatedly, Plaintiffs' claims concerning Defendants' conduct in monitoring and structuring the GoalMaker program would be typical of the claims brought by other class members under a breach of fiduciary duty theory, since those members were also enrolled in that program.  While class members' different investment decisions within the GoalMaker program vary, this fact alone does not defeat typicality.  *See, e.g., Rankin v. Rots*, 220 F.R.D. 511, 518 (E.D. Mich. 2004) ("Typicality may exist where there is a very strong similarity of legal theories, even if substantial factual distinctions exist between the named and unnamed class members.").

Since the putative representatives' interests—showing that Defendants breached their fiduciary duties at the Plan level—align with those of the unnamed members, and since the

adequacy of counsel is not contested,[7] the Court also finds the putative class representatives adequate to represent other members of the class.[8]

Defendants disagree with these conclusions for the same reason they object to the finding of constitutional standing: Plaintiffs were not involved in five of the GoalMaker funds, were not "invested in the Plan during the entire putative class period," and "there was no evidence before the Court that Defendants' alleged conduct applied equally to all of the investment options offered in the Plan." (ECF No. 209 at PageID 4889, 4893.)

These objections miss the mark and have also previously been raised. At the class certification stage, Plaintiffs "need only show 'that they can *prove* . . . that all members of the class have suffered the same injury." *In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021) (quoting *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015)). *See also Dukes*, 564 U.S. at 349–50. Here, Plaintiffs allege damage from the breach of fiduciary duty question common to all Plan participants. (*See* ECF No. 85 at PageID 1258–60; ECF No. 172 at PageID 2049, ECF No. 173-1 at PageID 2543 (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 599 n.11 (3rd Cir. 2009) ("An ERISA fiduciary breach action is an action on behalf of a plan regarding duties owed at the plan level")).) Contrary to Defendants' suggestion, Plaintiffs are not required to also show that all of the members have been injured to the exact same extent. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class

---

[7] *See* ECF No. 164 at PageID 2013.

[8] Defendants only objected to the Report's finding of adequacy due to their position on the Chief Magistrate Judge's references to allegations in the Plaintiff's Complaint. (ECF No. 209.) The Court has already addressed this objection. *See* Findings of Fact discussion *supra* Part A.

12

action is impermissible"); *In re Sonic Corp.*, 2021 WL 6694843, at *3 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2007)) ("Here, 'the fact of damages [is] a question common to the class even if the amount of damages sustained by each individual class member varie[s].").

### 2. Rule 23(b)

Finding the 23(a) requirements to have been met, the party seeking class certification must also satisfy at least one requirement of Rule 23(b). The Report finds that Plaintiffs' claims under ERISA "are suitable for class treatment under subparagraphs (A) and (B) of Rule 23(b)(1)." (ECF No. 205 at PageID 4839.) As Defendants have not objected to the portion of the Report recommending that Rule 23(b) has been satisfied, the Court has reviewed the Report's basis for this proposed finding for clear error and finds none.

Having agreed that Plaintiffs have met the requirements of Rule 23, the Court **ADOPTS** the Report's recommendation that Plaintiffs' ERISA claims are suitable for class treatment.

## CONCLUSION

Having carefully reviewed the Report, as well as the materials and arguments presented to the Chief Magistrate Judge, Defendants' objections, and Plaintiffs' response, the Court **OVERRULES** Defendants' objections and **ADOPTS** the Report in full. Plaintiff's Motion for Class Certification, (ECF No. 173), is therefore **GRANTED** in part.

**IT IS SO ORDERED**, this 7th day of December, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE