IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| MICHAEL J. IANNONE, JR. | ) | |
| and NICOLE A.JAMES, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
|     Plaintiffs, | ) | No. 19-cv-2779-MSN-tmp |
| | ) | |
| v. | ) | |
| | ) | |
| AUTOZONE, INC., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

_____

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO MAINTAIN
CONFIDENTIALITY OF CHALLENGED DOCUMENTS

_____

Before the court by order of reference are three motions to maintain confidentiality of challenged documents filed by defendants and non-parties Willis Towers Watson US LLC ("Willis Towers") and Prudential Retirement Insurance and Annuity Company ("Prudential"), filed on October 19, 2022, October 28, 2022, and November 16, 2022, respectively. (ECF Nos. 218, 224, 227.) Plaintiffs filed an omnibus response on November 23, 2023. (ECF No. 232.) Defendants filed a reply on December 7, 2022, and Willis Towers and Prudential both filed replies on December 23, 2022. (ECF Nos. 240, 241, 242.) For the reasons below, the motions are GRANTED in part and DENIED in part.

I.    BACKGROUND

The present case involves claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA") that are brought against AutoZone, Inc. ("AutoZone"), members of the AutoZone investment committee, and the investment fiduciaries of the AutoZone 401(k) plan ("Plan"). (ECF No. 85 at PageID 1168-69.) In brief, the plaintiffs, who were participants in the Plan, allege that the defendants breached their fiduciary duties under ERISA by failing to monitor the fees and performance of the Plan's investments. (Id. at PageID 1170.) Non-party Prudential is an insurance company that provided administrative and investment services for the Plan. (ECF No. 140 at PageID 1845.) Plaintiffs claim that Prudential is the principal beneficiary of the excessive administrative and service fees. (ECF No. 112-1 at PageID 1462.) Non-party Willis Towers is a former investment advisor for the Plan. (ECF No. 218 at PageID 5121.)

On December 4, 2020, the presiding district judge granted a joint motion for a protective order. (ECF No. 64.) The order reads in relevant part:

> "Protected Material" shall mean documents, information, and Discovery Material produced by any party and marked as CONFIDENTIAL. A party will designate material as CONFIDENTIAL only if it reasonably and in good faith believes the material contains confidential research, development, trade secrets; sensitive strategic, technical, marketing, financial, or commercial information; or personal information of any party to this action, or a party's customer, provided the party or third party has made efforts to maintain confidentiality that are reasonable under the

circumstances, that the producing party reasonably fears would, if publicly-disclosed, cause competitive injury (to the producing party or third parties). The party who so designates material as CONFIDENTIAL may at any time, and with the consent of any relevant third party, revoke that designation. No party or third-party producing documents subject to this Order will designate material as CONFIDENTIAL unless a particularized, specific assessment was made as to each document and the designation only applied to the portions of the document that contain confidential information. Information that is available to the public shall not be designated CONFIDENTIAL.

. . .

Protected Material and the information contained therein shall not, without the consent of the party producing it and the consent of the party claiming confidentiality (if that party is different from the producing party), be disclosed or made available to persons other than Qualified Persons, except as stated in this Order. All Protected Material shall be used solely for the purpose of this litigation, including any settlement or appeal. Protected Material, or extracts, summaries, or information derived from Protected Material, shall not be disclosed to any person except in accordance with the terms of this Order.

. . .

A party may object to the designation of particular Protected Material by giving written notice to the party designating the disputed information. If challenged, the written notice shall identify the information to which the objection is made. If the parties cannot resolve the objection through meet-and-confer within ten (10) business days after the time the notice is received, it shall be the obligation of the party designating the information as CONFIDENTIAL to file an appropriate motion within ten (10) business days after the conclusion of that meet-and-confer process. If such a motion is not timely filed, the disputed information shall not be treated as CONFIDENTIAL under the terms of this Order. If a motion is timely filed, the disputed information shall be treated as CONFIDENTIAL under the terms of this Order until the Court rules on the motion.

> In connection with a motion filed under this provision, the party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists for the disputed information to be treated as CONFIDENTIAL.

(Id. at PageID 891-95.)

On October 4, 2022, counsel for plaintiffs and defendants met via video conference to discuss plaintiffs' requests to de-designate the following confidential documents: 1) 150 documents produced by AutoZone and Northern Trust; 2) the deposition transcripts of eight AutoZone witnesses; and 3) the reports of three experts proffered by AutoZone. (ECF Nos. 218-2 at PageID 5134, 218 at PageID 5120.) Because the parties were unable to come to an agreement regarding the challenged documents, defendants filed a Motion to Maintain Confidentiality of Challenged Documents on October 19, 2022. (ECF No. 218.)

On October 14, 2022, counsel for plaintiffs and Willis Towers held a telephonic meet and confer. (ECF No. 224-1 at PageID 5529.) During that meeting, plaintiffs stated that they challenged all of Willis Towers's documents, the confidentiality designation of Willis Towers's Rule 30(b)(6) deposition testimony and accompanying exhibits, and all of Willis Towers's work product produced by other parties and non-parties to this action. (ECF No. 224-1 at PageID 5530.) However, plaintiffs did not specifically identify the documents to which they were asserting a confidentiality challenge. (Id.) As a result, on October 28, 2022,

Willis Towers filed their own Motion to Maintain Confidentiality. (ECF No. 224.)

On October 5, 2022, plaintiffs sent a letter to Prudential disputing the confidentiality designation for various documents. (ECF No. 227 at PageID 5698.) Plaintiffs and counsel for Prudential met and conferred, but were unable to reach an agreement as to 114 documents. (Id.) On November 16, 2022, Prudential filed a Motion to Maintain Confidentiality of Disputed Documents. (ECF No. 227.)

On November 23, 2022, plaintiffs filed an omnibus response with an attachment titled "Schedule A," a spreadsheet that identified all the challenged documents by deposition exhibit number. (ECF Nos. 232, 232-1.) The document provided a "description of document, confidentiality designation, and de-designation." (ECF No. 232 at PageID 6165.) Based on the parties' replies, the undersigned directed the parties and non-parties to meet and confer again, and to provide an updated Schedule A that included only those documents over which there remained a good-faith dispute regarding the confidentiality designation. (ECF No. 246 at PageID 6326-27.) On January 17, 2023, the updated Schedule A was provided to the court. (ECF No. 252.) On January 19, 2023, the undersigned directed the parties to file the challenged documents under seal. (ECF No. 253.) Based on the massive amount of documents at issue, the parties provided the challenged documents to the court using a OneDrive link on January 20, 2023. On January 30, 2023, the

undersigned held oral argument on the motions. (ECF No. 259.) On February 10, 2023, the parties filed a joint notice of the documents that remain in dispute.[1] (ECF No. 291.)

Broadly, defendants and non-parties argue that public disclosure of the documents at issue would put them at a competitive disadvantage. Plaintiffs contend that defendants and non-parties have not met "the heavy burden to overcome the strong presumption that judicial records are to be open to the public." (ECF No. 232 at PageID 6170.)

## II.  ANALYSIS

### A.  Legal Standard

The Sixth Circuit recognizes a "strong presumption in favor of openness when it comes to court records." Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co., 834 F.3d 589, 593 (6th Cir. 2016) (quoting Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983)). "Secrecy is fine at the discovery stage . . . At the adjudication stage, however, very different considerations apply." Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (citing Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) and Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002)). The line between the discovery stage and the adjudicative stage "is crossed when the

---

[1]The court has categorized the documents that remain at issue in Appendix 1, which is attached to this Order.

parties place material in the court record." Id. (citing Baxter, 297 F.3d at 546 ("Secrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.") (internal citations omitted)). At the adjudication stage, the "public has a strong interest in obtaining the information contained in the court record." Id. (citing Brown & Williamson, 710 F.2d at 1180).

The party seeking to seal information has the burden of overcoming the presumption of openness at the adjudication stage. Id. (citing In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001)). To meet this burden, the proponent must demonstrate that "disclosure will work a clearly defined and serious injury[.]" Id. In the civil litigation context, typically only "trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence" are sufficient to "overcome the presumption of access." Id. (citing Baxter, 297 F.3d at 546). Additionally, "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)). "[T]o justify sealing records, the proponent must demonstrate: '(1) a

compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored.'" <u>NorCal Tea Party Patriots v. Internal Revenue Serv.</u>, No. 1:13-cv-341, 2022 WL 1316267, at *5 (S.D. Ohio May 3, 2022) (citing <u>Kondash v. Kia Motors Am., Inc.</u>, 767 F. App'x 635, 637 (6th Cir. 2019)).

**B.   Parties' Confidential Business Information**

Many of the documents at issue are those which defendants argue would be competitively disadvantageous to disclose. (ECF No. 218.) These include reports generated by the defendants, internal communications regarding the plans at issue in this case, invoices, and a contract for services. (ECF No. 253.) According to the defendants, the reports and internal communications reflect "strategy and proprietary methodology for advising investment clients" and therefore unsealing would allow competitors to take advantage of their advising strategies. (ECF No. 218.) Defendants also seek to seal their invoices and advisory agreements, because unsealing these documents would impair their "ability to competitively price [their] services and negotiate with other clients." (<u>Id.</u>) Plaintiffs respond that because the defendants have not demonstrated that these documents contain trade secrets, their motion should be denied. (ECF No. 232.)

Upon review of the documents at issue, the undersigned finds that the proprietary methodology contained therein is closely

analogous to a protected trade secret. Defendant Northern Trust's methods for evaluating products are valuable because they are not "known or ascertainable by another party who may obtain economic value from [their] use or disclosure." See Certain Underwriters at Lloyd's London v. Jupiter Managing Gen. Agency, Inc., No. 3:20-CV-01037, 2022 WL 1462757, at *2 (M.D. Tenn. May 9, 2022) (citing the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839(3)). The same concerns that would justify sealing trade secrets are implicated here, too. Furthermore, other courts have found that sealing records is justified when the documents "could be used as 'sources of business information that might harm a litigant's competitive standing.'" Kentucky v. Marathon Petroleum Co. LP, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *5 (W.D. Ky. June 26, 2018) (quoting Nixon v. Warner Comm'ns, Inc., 435 U.S. 589, 598 (1978)). Thus, competitively sensitive information has been permitted to be filed under seal where the data poses "an increased risk of competitive harm." Tangram Rehab. Network, Inc. v. Sabra Health Care REIT, Inc., No. 320-cv-00804-BJB-chl, 2023 WL 2533062, at *3 (W.D. Ky. Mar. 15, 2023); see also Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC, No. 319-cv-00778-DJH-chl, 2021 WL 2301937, at *2 (W.D. Ky. June 4, 2021) (permitting sealing of confidential financial information based on the litigant's showing that it would suffer harm if the information were accessed by competitors). The same risk is present here.

At the hearing on this motion, the plaintiffs argued that the relative age of some of these documents justifies their disclosure. Indeed, some reports date as far back as 2013, and the service agreement is from 2009. However, while the undersigned recognizes that the passage of time may dilute the risk that disclosure may pose, it does not eliminate it. The same methodology used in the reports dating back to 2013 may be similar to, or even identical to, the strategies that the parties continue to use to this day. The same goes for the pricing models set forth in the 2009 service agreement. Under the facts of this case, the risk of harm is thus not defeated by the time that has passed since the creation of these documents.

Because the defendants have demonstrated that a "clearly defined and serious injury" would occur if these reports were to be disclosed, they have succeeded in showing that they have a compelling interest in sealing the records. Shane, 825 F.3d at 307. The undersigned also finds that the interest is not outweighed by the public's interest in accessing the information. Kondash, 767 F. App'x at 637. Finally, because the defendants only ask to seal a few documents on this basis, the undersigned finds that the request is sufficiently narrowly tailored. Id. The defendants' motion is therefore GRANTED as to the parties' reports, invoices, contracts, and internal communications.

## C.   **Third-Party Information**

- 10 -

Many of the other documents that plaintiffs seek to unseal originated with non-parties Prudential and Willis Towers. According to defendants, these documents reflect "service providers' strategic and proprietary methodology and pricing information." (ECF No. 218 at PageID 5125.) A review of the documents at issue reveals that this characterization encompasses reports, contracts, and internal communications generated by non-parties. (ECF No. 291.) Defendants also seek to seal two graphics created for the purposes of litigation that summarize the information contained in those documents. (Id.) Also at issue is a category of documents that consists of 408b-2 disclosures. (ECF No. 232.)

As explained above, the Sixth Circuit has instructed courts to "weigh heavily" the privacy interests of third parties when determining whether to unseal. Shane, 825 F.3d at 305 (citing Amodeo, 71 F.3d at 1050). To that end, district courts have sealed confidential business information where the proponent of sealing has demonstrated that unsealing would cause harm to a third party. See, e.g., Schnatter v. 247 Grp., LLC, No. 320-cv-00003-BJB-chl, 2022 WL 188193, at *5 (W.D. Ky. Jan. 20, 2022) (citing the privacy interests of third parties as justification for sealing "competitively sensitive and confidential information about pricing, strategies, and non-party clients"); Marathon Petroleum, 2018 WL 3130945, at *7 (granting a motion to seal confidential

business information of a third party where revelation would harm its ability to enter into other agreements).

In balancing the interests at stake, the undersigned finds that sealing is also warranted in this case as to Prudential and Willis Towers's documents. The non-parties to this lawsuit could not have anticipated that their confidential documents "would eventually become matter of public record." Marathon Petroleum, 2018 WL 3130945, at *7. Furthermore, unsealing these documents could inhibit these parties' ability to enter into agreements with other entities in the future. Id. Thus, the undersigned finds that there is a compelling interest in sealing the documents. In addition, Prudential and Willis Towers's status as non-parties to this litigation make the public's interest in accessing their records less significant than those generated by parties. The public's interest therefore does not outweigh the third parties' interest in sealing.

Finally, the undersigned finds that Prudential and Willis Towers's requests to maintain confidentiality are sufficiently narrowly tailored, with one exception. Among the categories that these non-parties seek to exclude are a group of documents consisting of 408b-2 disclosures. (ECF No. 232.) The information contained in these disclosures, although produced by a non-party, is subject to mandatory disclosure under ERISA. Thus, the privacy concerns regarding unsealing Prudential's other confidential

information are not as pertinent here. For those reasons, both the defendants' motion and non-party Prudential's motion as to these 408b-2 documents are DENIED.

As for the other third-party documents, the undersigned finds that Prudential and Willis Towers have met their burden of rebutting the presumption of openness. The heavy weight assigned to the privacy interests of third parties entitles Prudential and Willis Towers to continued protection. Shane, 825 F.3d at 305 (citing Amodeo, 71 F.3d at 1050). Both the defendants' motion and non-party Willis Towers and Prudential's motions are therefore GRANTED as to non-party contracts, reports, internal communications, and the summaries created of that information.

**D.   Expert Reports**

Finally, the parties dispute whether the reports of three expert witnesses should be unsealed. In reviewing these reports, the undersigned finds that the defendants' briefs have not set forth a sufficient justification to overcome the presumption of openness. Unlike the documents discussed above, these documents apparently do not contain proprietary methodology that resembles a trade secret. These reports neither reflect the competitively sensitive information of a party nor the private information of a non-party. The undersigned is not persuaded that unsealing these documents would cause harm to the defendants' "competitive standing." Marathon Petroleum, 2018 WL 3130945, at *5. The burden

to seal these documents has therefore not been met. For those reasons, both the defendants' motion and nonparties Willis Towers and Prudential's motions as to these documents are DENIED. The expert reports of Russell Wermers, Philip J. Suess, and Steve K. Gissiner shall be unsealed. The exhibits to those reports, however, shall remain sealed based on the same reasoning set forth in the previous sections.

### III.   CONCLUSION

For the reasons stated above, the Motions are GRANTED in part and DENIED in part. To the extent that documents are ordered to be unsealed, those documents shall remain sealed until May 1, 2023. Effective May 1, 2023, this order shall take effect and the documents that have been ordered unsealed going forward shall no longer be treated as sealed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

April 25, 2023
Date