**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

MICHAEL J. IANNONE, JR., and
NICOLE A. JAMES, as plan participants,
on behalf of the AUTOZONE, INC. 401(k)
Plan, and on behalf of others similarly situated,

      Plaintiffs,

v.                                                               Case No. 2:19-cv-02779-MSN-tmp

AUTOZONE, INC. et al,

      Defendants.

---

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND PRELIMINARILY APPROVING MOTION SEEKING ENTRY OF
A BAR ORDER**

---

Before the Court are Plaintiffs' and Defendants Northern Trust Corporation and

Northern Trust, Inc.'s ("Northern Trust") Motion for Preliminary Approval of Class Settlement,

("Motion for Preliminary Approval," ECF No. 422), and Northern Trust's Motion Seeking Entry

of a Bar Order, ("Motion for Bar Order," ECF No. 423).  For the reasons below, the Motion for

Preliminary Approval is **GRANTED**.  The Motion for Bar Order is **PRELIMINARILY**

**APPROVED**.

## BACKGROUND

On November 13, 2019, Plaintiffs[1] filed a Class Action Complaint against AutoZone, Inc.

for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 as

---

[1] The original Plaintiffs in this matter were Faith Miller and Michael J. Iannone, Jr.  (*See*
ECF No. 1.)  Ms. Miller was dismissed, (*see* ECF No. 69), and Ms. James appeared with the First
Amended Complaint (*see* ECF No. 85).

amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").  (ECF No. 1.)  Plaintiffs subsequently filed a First Amended Class Action Complaint that named several additional Defendants, including Northern Trust, which was the investment advisor to the AutoZone, Inc. 401(k) Plan ("the Plan"). (ECF No. 85.)  On December 7, 2022, the Court certified the following class:

> All persons, other than Defendants, who are or were participants as of November 11, 2013 in the Plan, and invested in any of the GoalMaker Funds including (i) beneficiaries of deceased participants who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future, and (ii) alternate payees under a Qualified Domestic Relations Order who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future.

> Excluded from the Class are (a) any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of any AutoZone or is or was a partner, officer, director, or controlling person of AutoZone; (b) the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of AutoZone; (c) Plaintiffs' counsel; (d) sitting magistrates, judges and justices, and their current spouse and children; and, (e) the legal representatives, heirs, successors and assigns of any such excluded person.

(*See* ECF No. 205 at PageID 4842–43; ECF No. 239.)

Since the filing of Plaintiffs' First Amended Class Action Complaint, Northern Trust has vigorously defended this lawsuit.  On the morning of the first day of trial, however, Plaintiffs and Northern Trust advised that they had reached an agreement in principle and requested that the matter be stayed as to them pending final approval of their settlement pursuant to Fed. R. Civ. P. 23.  (*See* ECF No. 393.)  The Court granted that request and directed Plaintiffs to seek preliminary approval of the settlement on or before December 7, 2023.  (ECF No. 403 at PageID 23532.) Plaintiffs timely filed that Motion, which is now before the Court.  Plaintiffs filed the proposed Settlement as an exhibit to their Motion for Preliminary Approval.  (ECF No. 422-4.)

Defendants AutoZone, Inc.; Steve Beussink; Brian Campbell; Bill Giles; Rick Smith; Kevin Williams; Michael Womack; and Kristen Wright ("AutoZone") responded to Plaintiffs' Motion for Preliminary Approval on December 13, 2023.  (ECF No. 424.)  They advised that

they do not oppose the Settlement and would cooperate to facilitate it.  (*Id.* at PageID 24761.)
They indicated, however, that contrary to certain language in the Motion for Approval, AutoZone
"does not possess 'business records' containing all of the information Plaintiffs need for the
Settlement—namely, participant Plan account data and investment election history for thousands
of individuals throughout a 10 year period."  (*Id.* at PageID 24761–62.)  They further inform the
Court that the current and former recordkeepers have that information and that they have already
requested it from those entities.  (*Id.* at PageID 24762.)  AutoZone thus asks that the Court
account for those circumstances in any order granting Plaintiffs' Motion for Preliminary
Approval.  (*Id.*)

A condition of Plaintiffs' Settlement with Northern Trust is that the Court enter an order
precluding Northern Trust and AutoZone "from asserting claims for contribution or
indemnification against one another arising from the allegations and claims at issue in this
lawsuit."  (ECF No. 423 at PageID 24747; ECF No. 422-2 at PageID 24680 ¶ 2.2.3.)
Accordingly, Northern Trust filed a Motion for Bar Order alongside the Motion for Preliminary
Approval.  (ECF No. 423.)  On December 13, 2023, AutoZone filed a Response to the Motion
for Bar Order advising that they do not object to the relief requested in that Motion.  (ECF No.
425.)

On February 15, 2024, the Court directed parties to file a supplemental briefing addressing
several issues related to their request for settlement approval.  (ECF No. 430.)  Parties filed that
brief as directed.  (*See* ECF No. 431.)

I.      **MOTION FOR PRELIMINARY APPROVAL**

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). That approval typically follows three steps: (1) preliminary approval of the proposed settlement, (2) notice of the proposed settlement to class members, and (3) a final hearing and assessment of the adequacy of both the notice process and the proposed settlement. *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660 (N.D. Ohio 2023) (citing *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021)); *see also Tenn. Ass'n of Health Main. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001).

As these stages indicate, a court "direct[s] notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement [under Rule 23(e)(2)] justifies giving notice." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. *See also* Fed. R. Civ. P. 23(e)(1)(B)(i–ii). Thus, while the Rule 23(e)(2) factors guide the court's determination about whether to grant *final* approval of a proposed settlement, the court should nonetheless assess them at the preliminary stage. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). To that end, Rule 23(e)(2) provides in full:

> (2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;

4

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

In addition to the Rule 23(e)(2) factors, courts in the Sixth Circuit typically consider those set forth in *UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007). *McKnight*, 655 F. Supp. 3d at 661 (explaining that the Sixth Circuit has not stated whether courts must still consider the *UAW* factors following the 2018 amendments to Fed. R. Civ. P. 23 but finding that courts should consider them in addition to the Rule 23 factors where relevant); *see also, e.g.*, *In re Papa John's Emple.*, No. 3:18-cv-825-BJB, 2023 U.S. Dist. LEXIS 164220, at *6 (W.D. Ky. Sept. 15, 2023) ("When deciding whether to preliminarily approve a classwide settlement, courts in this circuit consider the factors articulated in Fed. R. Civ. P. 23(e)(2)(A)-(D) and [*UAW*]."). Those factors are (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

While the Federal Rules of Civil Procedure differentiate between classes certified under Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(b)(3) when determining whether notice of a class's certification is required, these distinctions do not apply to notice of a class settlement. *CO Craft, LLC v. GrubHub Inc.*, No. 20-cv-01327-NYW-NRN, 2023 U.S. Dist. LEXIS 95742, at *66 (D. Colo. June 1, 2023) (quoting Manual for Complex Litig. § 21.312) ("Importantly, Rule 23(e)'s

notice requirement applies 'regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3).'").  Under Fed. R. Civ. P. 23(e)(1)(B), "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2); and certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

## DISCUSSION

### A.    Provisional Class Certification

The proposed class is nearly identical to the class that this Court has already certified under Fed. R. Civ. P. 23(b)(1).[2]  (ECF No. 431 at PageID 24773–74.)  Accordingly, the Court need not consider the appropriateness of preliminary certification under Rule 23(e) and conditionally recertifies the following class under Fed. R. Civ. P. 23(b)(1):

> All persons, other than AutoZone or Individual Defendants, who are or were participants as of November 11, 2013 in the Plan, and invested in any of the GoalMaker Funds including (i) beneficiaries of deceased participants who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future, and (ii) alternate payees under a Qualified Domestic Relations Order who, as of November 11, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future.
>
> Excluded from the Settlement Class are (a) any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of AutoZone or is or was a partner, officer, director, or controlling person of AutoZone; (b) the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of AutoZone; (c) Plaintiffs' counsel; (d) sitting magistrates, judges and justices, and their current spouse and children; and, (e) the legal representatives, heirs, successors and assigns of any such excluded person.
>
> The Court having determined that this Action may proceed as a non-opt out class action

---

[2] Parties clarified the class language in their Supplemental Brief.  (ECF No. 431 at PageID 24773.)  Aside from the AutoZone and Individual Defendants exclusion, which is included because those Defendants are not parties to this Settlement, Plaintiffs and Northern Trust "have agreed that the Settlement Class should not differ from the Class previously certified by the Court."  (ECF No. 431 at PageID 24773; ECF No. 422-1.)

under Fed. R. Civ. P. 23(a) and 23(b)(1), class members shall be bound by any judgment concerning the Settlement in this Action, subject to the Court's final determination as to whether this Action may so proceed.  Defendant AutoZone, Inc. shall, within thirty (30) days of the entry of this Order, 1) request the list of Settlement Class Members along with their contact information in a usable database, which shall include the most recent mailing addresses, full names, and Social Security numbers, and 2) request the Plan participant data described in the Plan of Allocation.

## B.     Preliminary Settlement Approval

The Court finds the proposed Settlement fair, reasonable, and adequate so as to warrant preliminary approval and thus commence the notice process.

### 1.     Rule 23 Factors

#### a.     Adequacy of Representation

The Court previously found the Class Representatives to have satisfied the requirements of Rule 23(a)(4), including through the retention of qualified counsel.  (*See* ECF No. 205 at PageID 4838; ECF No. 239 at PageID 6254–55.)  The Court has seen nothing to undermine that finding of adequacy as to the Class Representatives or Plaintiffs' Counsel and parties do not contest it now.  This factor thus supports preliminary approval of the Settlement.

#### b.     Arm's Length Negotiation

Plaintiffs represent that "[a]t all times, the parties negotiated at arm's length" and that this Settlement follows "numerous arms-length, intensely fought negotiation sessions including mediation."  (ECF No. 422-1 at PageID 24645.)  They also advise that parties and their experts have reviewed "hundreds of thousands of pages of documents involving financial data" in reaching this agreement.  (ECF No. 422-1 at PageID 24659.)  Based on the Court's interactions with Counsel and its knowledge of the entire record in this case, the Court has no concerns about

collusion or the nature of the negotiations in this matter. It also notes that parties engaged a neutral mediator in its efforts to resolve this matter, which further dispels any question about collusion. (*See* ECF No. 422-1 at PageID 24661.) This factor therefore supports preliminary approval of the Settlement as well.

### c. Adequacy of Relief to Class

#### 1. Summary of the Settlement

The Settlement provides that Northern Trust will pay $2,500,000.00 "to compensate Class members for their alleged losses, as well as to pay Class Counsel's attorneys' fees and expenses, Administrative Expenses of the Settlement, and the Class Representatives' incentive awards if ordered by the Court." (ECF No. 422-1 at PageID 24649.) This amount constitutes the full Settlement amount. (*See id.* at PageID 24686 ¶ 7.2.) Notably, compensation to the putative class members comes from the "Net Settlement Fund," which is the portion of the $2,500,000 left after payment of attorneys' fees and expenses, administrative expenses, and the incentive awards. (*Id.* at PageID 24687–88 ¶ 8.2.3.) A "Plan of Allocation" will govern the calculation, allocation, and distribution of the Net Settlement Fund to the class members. (*Id.*) Each class member will receive the same amount. (ECF No. 422-1 at PageID 24665.)

In exchange, the class members will agree to dismissal of the action against Northern Trust and to the release of any claims as to Northern Trust's actions administering and managing the Plan. (ECF No. 422-1 at PageID 24649; ECF No. 422-2 at PageID 24681–82.)

#### 2. Cost, Risk, and Delay

The Court agrees with Plaintiffs and Northern Trust that settlement would avoid further costs, risks, and delays of continued litigation. Ultimately, denial of the Settlement could lead parties to additional rounds of mediation or else to trial. Having held one trial with the other

Defendants in this case, the Court is familiar enough with the issues to find that trial would be costly, pose additional risks for parties, and delay resolution of this matter. This factor weighs in support of preliminary approval.

### 3.      Method of Distributing Relief

The Settlement's proposed method of processing claims and distributions also appears efficient. Under the Plan of Allocation, the Administrator will determine the class members and calculate the amount each class member receives by dividing the Net Settlement Fund by the total number of class members. (ECF No. 422-5 at PageID 24716; ECF No. 431 at PageID 24778.) To get the total number of class members, the Plan of Allocation provides that the recordkeeper of the AutoZone, Inc. 401(k) Plan will furnish to the Administrator (1) the balances in each class member's Plan account as of November 11, 2013 and (2) the balances in each member's Plan account on December 31 of each year from 2014 through 2023. (ECF No. 422-5 at PageID 24715–16.)

### 4.      Terms of Attorneys' Fees

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). A court has discretion to employ either the lodestar or percentage of the fund method in determining whether requested attorneys' fees are appropriate in a common fund case. *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 517 (6th Cir. 1993). The court must explain its reasons for adopting one method over the other, however, and must also set forth the factors supporting the ultimate fee award. *Id.* at 516 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Here, Plaintiffs' Counsel requests that the Court use the percentage of the fund method and seeks no more[3] than 33.3% of the full Settlement amount ($2,500,000). (ECF No. 422-1 at PageID 24653.) The Court finds that the percentage of the fund method is sufficient under the circumstances of this case. First, the Court is more familiar with the amount of work Counsel has performed in this matter than it usually is when evaluating a request for attorneys' fees and does not see the requested fees as disproportionate to the amount of work performed. This case is now over four years old and, as represented in their Motion, Plaintiffs "obtained hundreds of thousands of pages of documents comprised of meticulous financial data, contracts, and correspondence" throughout this process. (ECF No. 422-1 at PageID 24658.) In addition, "[t]he parties conducted over twenty (20) depositions, argued class certification, engaged in expert discovery, [and] filed for summary judgment . . . ." (*Id.*)

Second, a main disadvantage of percentage awards is that attorneys will "settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested." *Rawlings*, 9 F.3d at 516. That risk is not present here, as Plaintiffs' Counsel litigated this case with Northern Trust up to the first day of trial.

Third, even the highest requested percentage—33.3%—is within the range of typical attorneys' fees in cases such as this one. *See, e.g.*, *In re Broadwing, Inc. v. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) (finding a request for 23% percent to be "appropriate in light of prevailing market rates and well below the 1/3 contingent fee percentages common in

---

[3] 33.3% would be $833,325.00. Counsel has since indicated they will seek $699,930.00 in fees. (ECF No. 431 at PageID 2479–80.) The Court considers the reasonableness of both sums as part of its assessment of the Settlement's reasonableness. It notes, however, parties' observation that the proposed Settlement "is not contingent upon the Court granting preliminary or final approval of a request for an incentive award or for an award of attorneys' fees." (*Id.* at PageID 24772 n.1.)

contingent fee plaintiffs' litigation"); *id.* (collecting cases indicating courts in the Sixth Circuit have allowed attorneys' fees ranging from 20-50% of a common fund).

Finally, the lodestar figure confirms the reasonableness of the requested fee amount. At the Court's request, Counsel addressed and calculated the lodestar for their work in this case, comparing it to national rates for ERISA class actions in the Sixth Circuit. (*See* ECF No. 431-3 at PageID 24801.) Their thorough calculations—and their representation that those calculations do not include over 600 hours spent following the Settlement—demonstrate the reasonableness of their request. (*See id.* at PageID 24802.)

For these reasons, the Court finds this factor to support preliminary approval.

### 5.      Rule 23(e)(3) Agreements

Parties requesting approval of a settlement under Rule 23 "must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). This requirement targets "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment. As the only agreement relevant here is the Settlement Agreement, the Court finds this factor to support a finding of adequate relief.

### d.      Equitable Treatment of Class Members

This factor aims to ensure that class members are treated fairly, taking into consideration "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment; Fed. R. Civ. P. 23(e)(2)(D).

### 1.   Distributions to the Class Members

The Settlement subjects each class member to the same release, and one's release does not affect the relief the other class members will receive.  (ECF No. 422-1 at PageID 24666.) Furthermore, while the form of payment class members may receive might differ from one to another (former participants in the AutoZone, Inc. 401(k) Plan will receive payment via check, while those with current accounts in the Plan will receive the payment as a deposit into that account, (ECF No. 422-5 at PageID 24716–17)), this distinction does not raise concerns with the Court.[4]   These elements of the Settlement thus support a preliminary finding of equitable treatment.

The Court had some reservations about the equal distributions to the class members because the various class members likely had varying account balances, meaning a breach of fiduciary duty to the Plan would have affected their accounts to different extents.  Given that likelihood, it seems apparent that the proposed apportionment of relief does not account for these differences in the class members' claims.  In response to this concern, Parties stated that this arrangement is equitable:

> given the Settlement's smaller dollar value compared to the relief requested by
> Plaintiffs at trial against Defendant AutoZone, and given there is a diminishing
> return to the Class if administrative resources and expenses [are] used to calculate
> individual pro-rata payouts, when the difference in payouts would be negligible,
> particularly when taking into consideration that the best practice would be to
> provide a "floor" on the payouts such [that] there is still a likelihood of a participant
> cashing their payout check (typically $10).

(ECF No. 431 at PageID 24779.)  The Court finds these arguments well-taken and thus does not consider the equal distributions to counsel against preliminary approval.

---

[4] The Class Representatives are the only class members eligible for incentive awards, which may also raise concerns.  The Court addresses this issue below.

## 2.      Incentive Awards

The incentive awards to Plaintiffs could be a sign of inequitable treatment of the class members, and thus indicative of inadequate relief under Rule 23.  *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)) ("[W]e have expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."). And, notably, the Sixth Circuit has neither blessed nor barred such payments.  *Id.* (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 20113)).  "Thus, to the extent that incentive awards are common, they are like dandelions in an unmowed lawn—present more by inattention than by design."  *Id.*  The Sixth Circuit has, however, indicated that such an award is more likely to be permissible when it covers only a portion of the representative's likely damages, since the representative must rely on the recovery mechanisms to which the other class members are subject in order to recover the rest of his damages.  *Id.*

In this case, Plaintiffs' Counsel seeks a $10,000 award for each of the two Class Representatives.  (ECF No. 422-1 at PageID 24652.)  Counsel acknowledges that the ratio of these awards to the amount each class member is to recover may necessitate a showing of "more than 'minimal involvement.'"  (ECF No. 431 at PageID 24774.)  But they argue that Plaintiffs' participation was "extraordinary" given the fact that this case proceeded to trial and included, among other things, consultation with Counsel for over four years, production of documents, responses to interrogatories, out-of-town depositions, travel, and attendance at trial.  (*Id.*) Counsel further represents that Plaintiffs lost pay and potentially sacrificed or delayed other job opportunities as a result of the time they devoted to this matter.  (*Id.*)

Based on Counsel's representations, and considering the awards' relatively low ratio to the Settlement amount, the Court does not find the requested Plaintiffs' awards unreasonable in this case or likely to have constituted an inappropriate incentive to settle. This factor does not counsel against preliminary approval.

### 2. *UAW* Factors

The Court also finds that the *UAW* factors support preliminary approval.[5]

#### a. Amount of Discovery Engaged in by Parties

This factor considers whether parties have conducted enough discovery to be able to sufficiently assess the merits of a proposed settlement. *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Here, Plaintiffs and Northern Trust participated in voluminous discovery and litigated this case up to the first day of trial. That work included, among other things, conducting twenty depositions, reviewing of thousands of documents and financial data, and engaging in significant motions practice. (ECF No. 422-1 at PageID 24667.) This factor supports preliminary approval.

#### b. Likelihood of Success on the Merits

The likelihood of success on the merits "provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). While Plaintiffs have proceeded through trial against other Defendants, that outcome has not yet been determined. Regardless, the Court cannot say with certainty what the likelihood of success would be as to Northern Trust because it played a different role in this case than the other Defendants. The record in this matter does make clear, however, that both

---

[5] A couple of the *UAW* factors overlap with the Rule 23(e) factors. The factors the Court has addressed are those involving the risk of fraud or collusion and the likely costs of further litigation. (*See* discussion *supra* Sections (B)(1)(b) and (B)(1)(c)(2).)

Plaintiffs' and Northern Trust would continue to vigorously litigate their relative claims and defenses absent settlement. Indeed, Northern Trust has adamantly maintained, for example, that it did not have a fiduciary duty to monitor recordkeeping fees and services, and its request for summary judgment on this issue has been denied. (*See* ECF No. 432 at PageID 24828.) It has also continuously held that it prudently advised the AutoZone Investment Committee in its role as advisor to the Plan. Plaintiffs, of course, claim that Northern Trust had a duty to monitor recordkeeping fees and breached it, in addition to violating its fiduciary duty to the Plan in other ways. Further litigation of these issues would necessitate further effort and expense to resolve, thus supporting Plaintiffs' and Northern Trust's intention to settle.

### c.      Opinions of Class Counsel and Class Representatives

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Strano v. Kiplinger Wash. Editors, Inc.*, 649 F. Supp. 3d 546, 559 (E.D. Mich. 2023) (quoting *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 U.S. Dist. LEXIS 66899, at *26 (E.D. Mich. Aug. 29, 2008)). As Class Counsel and Representatives support this Settlement, (ECF No. 422-1 at PageID 24657–59), this factor supports preliminary approval.

### d.      Reaction of Absent Class Members

This factor neither supports nor weighs against preliminary approval because the Settlement has not proceeded through the notice stage. The Court thus reserves consideration of it until notice has been provided to class members.

### e.      Public Interest

"Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899

(6th Cir. 2019) (quoting *In re Cardizen CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). These principles are applicable here, and thus support preliminary approval.

## C.      Notice to Class Members

For the reasons already discussed, the Court finds that it will likely be able to approve the proposed Settlement under Fed. R. Civ. P. 23(e)(2) and certify the class for purposes of judgment on the proposal. Accordingly, the Court must direct that notice be given in a reasonable manner to class members. To that end, the Court is satisfied with the means that parties have proposed. First, the substance of parties' proposed Class Notice—which includes a postcard notice and a long-form notice—is adequate to inform members of the class of their ability to object to the Settlement and advise them of how to procure payment. (ECF No. 422-3 at PageID 24698–707.) The short-form notice (or "postcard notice") accurately describes the nature of this suit and the scope of the proposed Settlement, notes that members' rights may be affected should they receive payment, and would set forth a date and time for the fairness hearing, also mentioning that members may comment on or object to the proposed Settlement. (*Id.* at PageID 24699.) The postcard notice would further direct members to the long-form notice on the settlement website and clarifies that it is merely a summary of the Settlement. (*Id.*) The long-form notice would provide a link to the Settlement Agreement, additional details of the substance of the Settlement, including the binding nature of a final approval, and more expansive treatment of class members' rights and options. (*Id.* at PageID 24701–707.) Second, the Court considers the means of issuing notice sufficient; the Administrator will issue notice to the individual class members via U.S. Mail and notice will also be available online and through a telephone support line. (*See* ECF No. 422-1 at PageID 24649–50.)

Accordingly, the Court finds the proposed Notice sufficient. By ***no later than 60 days***

***before the Fairness Hearing***, Plaintiffs shall cause the Class Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be disseminated to the last known address of each Member of the Settlement Class who can be identified by reasonable effort and posted on the Settlement Administrator website.  Reasonable expenses of effectuating Class Notice are to be paid out of the Settlement Fund.  At or before the Fairness Hearing, Class Counsel shall file with the Court a proof of timely compliance with the foregoing notice requirements.

**D.      Fairness Hearing and Other Related Deadlines**

**1.      Objections and Notices of Intent to Appear**

The Court will hold a fairness hearing on the proposed Settlement to determine finally, among other things:

(a)   Whether the Settlement should be approved as fair, reasonable, and adequate;

(b)   Whether the litigation against the Northern Trust Defendants should be dismissed with prejudice pursuant to the terms of the Settlement Agreement;

(c)   Whether the Final Approval Order attached to the Settlement Agreement should be entered and whether the Released Parties should be released of and from the Released Claims, as provided in the Settlement Agreement;

(d)   Whether the notice and notice methodology implemented pursuant to the Settlement Agreement (i) were reasonably calculated, under the circumstances, to apprise Members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing; (ii) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (iii) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

(e)   Whether the proposed Plan of Allocation of the Net Settlement Fund is fair, reasonable, and adequate and should be approved by the Court;

17

(f)   Whether the Settlement has been negotiated at arm's length by Class Counsel on behalf of the Plan and the Settlement Class, whether Plaintiffs have acted independently, whether Plaintiffs' interests are identical to the interests of the Plan and the Settlement Class, and whether the negotiations and consummation of the Settlement by Plaintiffs on behalf of the Plan and the Settlement Class do not constitute "prohibited transactions" as defined by ERISA §§ 406(a) or (b), including whether Prohibited Transaction Exemption 2003-39 or another class exemption from the prohibited transaction rules applies;

(g)   Whether the application for attorneys' fees and expenses to be filed by Class Counsel should be approved;

(h)   Whether incentive awards should be awarded to Plaintiffs; and

(i)   Any other issues necessary for approval of the Settlement.

Any Rule 23 class member who wishes to appear at the hearing to object to the fairness, reasonableness, or adequacy of the proposed Settlement; the proposed incentive awards; or the requested award of attorneys' fees and expenses ("Objector") may do so either in person or through counsel retained at the Objector's expense.  They must first, however, submit (1) a statement of the objection(s), specifying the reason(s), if any, for each such objection made, including any legal support or evidence that such Objector wishes to bring to the Court's attention or introduce in support of such objection and (2) a "Notice of Intention to Appear" setting forth, among other things, the name, address, and telephone number of the Objector (and, if applicable, the name, address, and telephone number of the Objector's attorney).

All objections must be signed by the Settlement class member.  Objections and Notices of Intention to Appeal must be postmarked to the below address ___at least twenty-one (21) calendar days prior to the Fairness Hearing, or by no later than October 31, 2024___:

**PLAINTIFFS' COUNSEL**
D.G. Pantazis, Jr.

Wiggins Childs Pantazis Fisher Goldfarb
301 19th Street North
Birmingham, AL 35203

Any Objector who does not timely submit an objection and "Notice of Intention to Appear" in accordance with this paragraph shall not be permitted to appear and speak at the Fairness Hearing, except for good cause shown.  Any class member or other person who does not timely serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement and any untimely objection shall be barred.  The Parties' counsel shall promptly furnish each other with copies of any and all Objections and Notices of Intention to Appear that come into their possession.

The Parties shall respond to any Objector _**at least seven (7) calendar days prior to the Fairness Hearing, or by no later than November 14, 2024**_, by filing the Objection (and Notice of Intention to Appear, if any) and response to the Objection with the Court.  The Parties may submit joint or separate responses to the Objection.

2.      **Compliance with Class Action Fairness Act of 2005 ("CAFA")**

Northern Trust shall, _**on or before ten (10) calendar days prior to the Fairness Hearing**_, file with the Court proof of compliance with the CAFA, as specified in 28 U.S.C. § 1715 and Section 2.2.6 in the Settlement Agreement.

2.      **Application for Attorneys' Fees**

Any application by Class Counsel for attorneys' fees and reimbursement of expenses, for an Incentive Award to the Named Plaintiffs, and all papers in support thereof, shall be filed with the Court and served on all counsel of record _**at least twenty-eight (28) calendar days prior to the Fairness Hearing, or by no later than October 24, 2024**_.

3.      **Independent Fiduciary and Settlement Administrator**

The Court understands that Northern Trust has retained or will retain an Independent

19

Fiduciary for the purpose of evaluating the Settlement to determine whether to authorize the Settlement on behalf of the Plan. All fees and expenses incurred by the Independent Fiduciary (including fees and expenses incurred by consultants, attorneys, and other professionals retained or employed by the Independent Fiduciary) in the course of evaluating and authorizing the Settlement on behalf of the Plan, shall be paid by Northern Trust. The expenses incurred by the Settlement Administrator in administering the Settlement and allocating the Settlement Fund pursuant to the Plan of Allocation approved by the Court, including any payable expenses of the Settlement Administrator, shall be paid out of the Settlement Fund.

### 4.      Termination of Settlement

If the Settlement is terminated in accordance with the Settlement Agreement or does not become Final under the terms of the Settlement Agreement for any other reason, this Order and all Class Findings shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order. In the event this Order becomes of no force or effect, no part of it shall be construed or used as an admission, concession, or declaration by or against the Northern Trust Defendants of any fault, wrongdoing, breach, or liability, nor shall the Order be construed or used as an admission, concession, or declaration by or against Plaintiffs or the Settlement Class that their claims lack merit or that the relief requested in the Action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have.

## II.      MOTION FOR BAR ORDER

Northern Trust seeks a bar order to protect it and AutoZone from contribution and similar claims by one another. (ECF No. 423-1 at PageID 24751.) Northern Trust also advises that such an order would "ensure[] that the Non-Settling Defendants [AutoZone] do not incur more than

their proportionate share of liability in any future judgment against them." (*Id.*)  The reason such an order is so important to parties is that "ERISA provides for joint and several liability and the law is unsettled regarding whether ERISA allows contribution and indemnification claims among co-fiduciaries." (*Id.*)

Bar orders are impermissible in certain circumstances, such as when they dispose of a third party's claims without their consent.  *Digit. Media Sols., LLC v. South Univ. of Ohio, LLC*, 59 F.4th 772, 774, 781 (6th Cir. 2023).  In addition, courts do not authorize bar orders when they foreclose independent claims as opposed to claims for contribution or indemnity.  *See, e.g.*, *In re Greektown Holdings, LLC*, 728 F.3d 567, 579 (6th Cir. 2013) (quoting *TBG, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir. 1994)) ("'[C]ourts that have allowed bar orders have only barred claims in which the damages are measured by the defendant's liability to the plaintiff. Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff.' Significantly, '[n]o court has authorized barring claims with independent damages.'")

Here, the bar order is limited to AutoZone's potential claims seeking indemnification or contribution against Northern Trust.  There are no other third parties whose interests the Court must consider and, further, AutoZone does not oppose the Motion for Bar Order.  For these reasons, the Motion for Bar Order is preliminarily approved.[6]

---

[6] Because the Settlement is contingent on the issuance of a bar order, the Court considers it within the context of preliminary approval.  The Court also notes that to the extent an evidentiary fairness hearing on the bar order applies when a non-settling defendant does not oppose such an order, it is not required because the judgment reduction proposed in the Motion for Bar Order is at least as great as the proportionate share of fault that is attributed to Northern Trust.  *See In re Greektown Holdings*, 728 F.3d at n.7 (citing *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 306 (2d Cir. 2003)) (describing the *Gerber* Court as saying "no fairness hearing is required if the judgment reduction is at least as great as the settling defendant's proportionate fault").

**CONCLUSION**

As previously discussed, and for the reasons set forth above, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1. Plaintiff's Motion for Approval, (ECF No. 422), is **GRANTED**;

2. The Settlement Agreement (ECF No. 422-2) and proposed Plan of Allocation (ECF No. 422-5) are **PRELIMINARILY APPROVED** as fair, reasonable, and adequate;

5. A fairness hearing is **SCHEDULED** for ___November 21, 2024 at 1:00 p.m., in Courtroom 4 of the Odell Horton Federal Building, 167 N. Main St., Memphis, TN, 38103___;

5. Class members who wish to object and appear at the fairness hearing are **ORDERED** to timely submit their objections and Notices of Intent to Appear as directed above and Parties are **ORDERED** to timely respond to any such objections;

6. Class Counsel is **ORDERED** to timely submit their proposed award for attorneys' fees and costs;

7. Class Counsel is further **ORDERED** to file with the Court a motion for entry of the Final Approval Order ___at least twenty-eight (28) calendar days prior to the Fairness Hearing, or by no later than October 24, 2024___.

8. Northern Trust is **ORDERED** to timely file proof of compliance with the CAFA;

9. Northern Trust's Motion for Bar Order is **PRELIMINARILY APPROVED**;

10. Pending final determination of whether the Settlement should be approved, all Members of the Settlement Class and the Plan are each hereby **BARRED AND ENJOINED** from instituting or prosecuting any action that asserts any Released Claim against the Released Parties or any of them.

**IT IS SO ORDERED**, this 21st day of August 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE